21-1260 John M. Crim, Appellant v. Cmsnr. Mr. DeRuzo v. Appellant, Mr. John Shoy v. Appellant Good morning Mr. DeRuzo. Good morning Your Honor. May it please the Court, Judge DeRuzo on behalf of the Appellant, John Michael Crim, would like to reserve 4 minutes for the hearing. In this case, the Tax Court committed two errors of law, either which entitles the Appellant to relief. First, the Tax Court erred in concluding that after the amendments to 74-41, that 74-43 subsection F doesn't implicate separation of powers doctrine. And the second issue is that the 6700 penalties, as you hear, are not subject to any statute of limitation, either under Code Section 60501A or the catch-all provision of 28 U.S.C. Section 2462. According to the first issue, in 2016, 74-41 was statutorily amended to include the language that, quote, the Tax Court is not an agency of and shall be independent of the executive branch of government. This statutory language was added by Congress in direct response to this Court's decision for Kertetsky, and Congress clarified, as detailed in the Senate report, that, quote, the Tax Court is not part of the executive branch, close quote. Therefore, 74-41 makes it clear that the Tax Court is now an Article I court, and that under the Supreme Court's decision of FriTag, exercises judicial power and not executive, legislative, or administrative power. Consequently, because the Tax Court is an Article I court exercising judicial power, the President's removal power under subsection F violates the separation of powers doctrine, and the Tax Court's decision to the contrary was there. Wasn't all of this ground covered in our prior opinion in Kertetsky? It was, and Congress read the decision, put issue with the decision, statutorily amended Section 74-41, take that into consideration, and state in addition to the statutory language that to clarify that the Tax Court is not part of the executive branch. It says, it didn't say that, it says it's not an agency of the executive branch. That's the first part, right? What part of Kertetsky was dependent upon of the decision, our decision, was dependent upon from considering the Tax Court to be an agency of the executive branch? I don't believe the decision hinged upon whether the Tax Court being expressed agency of the executive branch, but I believe that the decision spoke in terms of the Tax Court being under the executive branch. And I think we all can agree that the Tax Court is not a department, it's not the Treasury Department, the Department of Defense, Department of Commerce, but now the statutory language of 74-41 holds it as not an agency independent or dependent or otherwise. What part of our opinion in Kertetsky changes, or should I say, what part of that prior opinion relied upon the fact that the Tax Court was not independent of the executive branch? Was there any part of that analysis that said, well, because the Tax Court isn't really independent of the executive branch, we find the scheme to be constitutional? I don't believe that the opinion spoke in that manner. I believe the opinion spoke to that the Tax Court does not exercise legislative powers and is not an Article III court. Ergo, it's in the executive branch. Because the president is the head of the executive branch, there is no inter-branch separation of powers problem. I don't think the decision that this court had spoke to or had an outcome-determining principle that whether the Tax Court is an independent agency or a dependent agency or an agency at all had any bearing on this court's analysis in Kertetsky. We'll see. Then how are we to – I guess what I'm saying is we're bound by a prior opinion of our court. We can't go on and say that a prior opinion shouldn't be followed. But we're bound by it. We have this intervening statute. But if this statute doesn't change or impact the analysis of the prior opinion, then how is it that we should come out with a different conclusion today or feel like we're not bound by that prior opinion today? Well, various circuits have different articulations of this principle of the prior panel precedent, but I'm pretty sure that this circuit applies to the general concept that if subsequent events take place, that calling to question the prior decision, then a subsequent panel is not bound. Well, Congress can't overrule our interpretation of the Constitution, right? That is true, but Congress can change the statutory scheme on which this court's statutory review is based. That's why I was asking the question. So Congress, according to this language, changed the scheme potentially two ways by saying – by clarifying, if it wasn't clear before, that the tax court isn't an agency of the executive branch, but you said that nothing in Kertetsky turned on whether the tax court was an agency. And then Congress made clear that the tax court shall be independent of the executive branch, and nothing in the prior opinion turned on whether it was not independent of the executive branch. And I understand that, Your Honor, but I would submit that when Congress identifies a case that is problematic and subsequently amends the statutory language in response to a perceived problematic case, Congress is upsetting the status quo. Well, what work is this language doing? Maybe that's a better question. What is the effect of that as far as the structure of the tax court? I would submit, Your Honor, according to the Senate report, and I'm quoting here, the tax court would be enhanced by greater autonomy in its administration of visa-collects, as well as the clarification that it is not part of the executive branch. My view of the legislative history, combined with the statutory language in response to this court's decision, is that the tax court is an Article I court. It's not a part of the executive branch. It exercises judicial power, albeit a non-Article III judicial power. And as a result, the fundamental statutory underpinning of Kuretsky has been changed, and therefore this court is not bound under prior panel rule to abide by Kuretsky. Didn't Kuretsky acknowledge that the tax court exercises judicial power? Yes, I do believe it did, and citing to the Supreme Court's Witek decision, which makes clear that it operates and uses judicial power, just not in the Article III sense. I have some statute of limitations. Are you giving me a question? I don't want to dominate the questioning here, so I'll stop there. I want to ask a statute of limitations question. Sure. Number one is sort of a back question. Do you know of any of CRIM's clients, any clients of the tax shelter filed a tax return? I don't know, and I was not trial counsel at the… The Third Circuit said in the United States v. CRIM, based on instructions provided by CRIM's firm, many of its clients did not file federal tax returns. Should I take that to mean that at least… take that to mean that his clients did not file tax returns? I'm not going to dispute that, and I was also counsel for the Third Circuit, so I don't have reason to believe that is a factually incorrect statement by the Third Circuit. And then can you give me an example of a tax shelter promotion case, hypothetical case, in which statute of limitations would be triggered? Sure. I'm promoting the shelter. You're the taxpayer. I claim, promote, interest income is not subject to taxation. Therefore, you don't have to report it. You file your 1040, you report your income, VBOP, the interest income. Service comes by, audits you, you have a 1099 interest from your bank or your brokerage house, and then issues a stat notice based upon the deficiency, based upon the interest. That is not reported. That would be a typical example of a portion of your tax return that would be improper, that would be the shelter, but you still file a tax return. Another hypothetical, which is going on to this date, are the tax shelters regarding conservation easements. In those conservation easements, you have inflated valuations of the charitable contribution that the land is being donated. Then you have an inflated charitable contribution and an inflated deduction. Again, those are tax returns that have been filed with the service that precipitate or demonstrate the promoter activity. Okay. And I hope the IRS counsel was listening because my question, if we adopt your interpretation of the statute, is that, are those factual hypotheticals correct? Would they actually trigger a statute of limitations in terms of assessment? And I would point, Your Honor, to 6700A2-CAP-A, and it talks about, quote, a statement. A statement could be a tax return, a statement made to the IRS. A statement could be a non-tax return reported. For example, a quarterly statement of 941, or by Ben-Fuda. There could be numerous statements. A 1099 is not a tax return, but it's an informational statement which then precipitates or allows taxpayers to compute a tax. There are a lot of tax returns or statements that I believe 6700A2-CAP-A would include. I'm over my time, but my textual argument for 6700 is simple. 6671A provides that the penalties shall be assessed and collected in the same manner of taxes except as otherwise provided by. 6700 itself does not have an express limitation provision. In 6703, Congress provided some additional exceptions or differences, in particular, for example, the exception to the efficiency procedures. So as a result, when you take 6671, 6700, 6703, you get to the default 10-year statute of limitations on collection under 6502, and you get to the three-year statute of limitations on assessment under 6501A. Now, again, 6501A, there could be no return. There could be a fraudulent return.  There are numerous clearly delineated exceptions to the statute of limitations. But when you read the statutory scheme in its whole, it's my view that those contemplated exceptions to 6501 fit there, and as a result, this Court could conclude the decision below was erroneous. However, if 6700 isn't subject to any limitation provision in the code itself on assessment, then this Court's decision in 3M regarding 2462 comes to bear, and that panel's decision, I believe, supports our reading that an assessment is the prerequisite, and the assessment is the beginning of the enforcement proceedings, and the 3M decision from this Court cited favorably Judge Boggs' dissent in the Sixth Circuit opinion in Mulliken, which held to the contrary at least as far as 6700 penalties in respect to the Title 20 statute of limitations. So with that being said— I want to clarify something. You had in your brief the issues presented for review. The fourth issue, the last issue, was related to tax court failing to properly apply the summary judgment standard of review. Is that issue now basically of no moment? It seems like the government responded to that in their brief, and you didn't say anything about it in your reply brief. I don't think it's kind of neither here nor there now. Correct, Your Honor. I believe the IRS will concede that starting on page 2427 of its brief, they agreed that statute of limitations is a verification issue under 6330C1, or in the alternative that my client was not given a prior opportunity under 6330C2-B. And then as a result, the issue of statute of limitations now is appropriately teed up for this Court's consideration. So that's my view of the government's concession. Okay. So you were raising that kind of as a prophylactic measure to make sure that you would be able to present this issue, and since the government is agreeing that it's going to be properly before the Court, we don't need to worry about that issue anymore? Yes, because my take on the statute of limitations was Judge Labras in his decision said that I couldn't raise the statute of limitations and then proceeded to address it arguendo as an alternative. So I had to address that first proposition that it was properly before the tax court and that there was a material issue of fact, even assuming that it was not a verification under C1 as to prior opportunity, which I may much do well whether there is this registered number or what was available in the administrative record. Thank you. Judge Rogers, any questions? No, thank you, Judge. All right. Thank you. We'll give you a couple minutes on rebuttal, and now we'll hear from Mr. John Choi. May it please the Court. My name is Matthew John Choi. I represent the appellee and the Commissioner of Internal Revenue. Krim must pay. He owes tax penalties as a result of his tax shelter promotion activities. There is no dispute as to those liabilities or as to the amounts of the penalty. Because he has not voluntarily paid those penalties, the Commissioner now seeks to collect involuntarily through an administrative. Krim has raised multiple arguments as to why the Commissioner's levy should be, in effect, fully stopped or further delayed, but those arguments lack merit. This Court should affirm the tax court and find there's no reason to stop collection because there is no statute of limitations violation, and this Court should find there's no reason to further delay collection because there's no constitutional problem. I agree with Krim on 6501 and 6670. In other words, if I think, okay, 6671 says the word tax includes tax penalty, and 6501 refers to a statute of limitations for tax. I know you disagree with all that. Let's assume that I'm with Krim, that there's a possibility that that leads to a result where the statute of limitations will still never run in a tax shelter case because statute of limitations doesn't apply when a return is fraudulent. That's going to be a large category, tax shelter cases, I think. And then it also doesn't run until a return is filed. So my question to opposing counsel was, well, when would a return trigger this statute of limitations if his interpretation of the statute is correct? I think maybe the answer is never, but maybe it's possible that a return, if he's right about the statute, could, in some hypothetical, trigger statute of limitations in a shelter case. So my first question to you is, if he's right about how to read 6501A, will the statute of limitations for a tax shelter case ever be triggered in the real world? I think that's – I apologize. That's a difficult question to answer because you also have to then, I think, add one more piece. And Crimmel argues that the promoter penalty would then relate to the tax return of the taxpayer. But we disagree with that. You can look at the Ninth Circuit's case in the State Preservation Services. The Ninth Circuit held that the penalty is all about the misrepresentation made by the promoter, right? Once they've made that misrepresentation, the offense is over.  But if it did relate to the tax return of the taxpayer, then under your hypothetical, Your Honor, then yes, the time limit would start. We, of course, argue that 6501's limitation is for the filing of a return, which there is no return that relates to the promoter penalty. No return will ever be filed for the promoter. What about 6501A by – does it ever apply to a tax penalty? Yes. Yes, Your Honor. There are other penalties that do relate to returns. So how do we tell which tax penalties are covered by 6501? Well, one way, Your Honor, some of the other penalties that would be covered have special rules that show that they relate to the returns. For instance, penalty for preparing returns, false returns specifically relate. But for other penalties, because they don't relate to any particular period of time, there simply would never be a return filed. It's just for making or furnishing a false statement while marketing a tax show. Do you think that the possibility that even if Crim's interpretation of 6501A is correct, even the possibility that it will not lead to the statute of limitations ever being triggered, this would have to take in your theory that a filer's return or the client of a tax shelter's return does not trigger the statute of limitations? Do you think that that possibility should inform interpretation of 6501A, or do you think, well, we should just figure out what 6501A means and not test the limits of our imagination as non-tax expert judges in terms of figuring out, well, is it ever going to actually be triggered? As I understand the question, you mean what is the, you know, what emphasis to put on the fact of a possibly unlimited time to assess? I think Crim's argument in that regard is fundamentally flawed. He argues essentially that there must be some time limit to assess, but as to the government, the default is actually the opposite. As to the government, a time limitation is not applied by default. Congress must explicitly mandate a time limitation. Here, they've chosen to only limit the time to collect post-assessment, but not to similarly limit the time to collect assessment. So I think that the possibly unlimited time wouldn't add credence to it. I actually wanted to start with the statute of limitations argument, and before diving deeper into those arguments, I think it could be helpful to discuss some relevant background principles of tax law that have come up in the briefing. IRS assessments may be relatively unique in that the IRS doesn't impose a civil penalty when it assesses a civil penalty, just as it doesn't impose a tax when it assesses a tax. Under the tax code, liabilities arise under the statute and are imposed by the statute as a matter of law once the prerequisites have occurred. IRS assessments are just bookkeeping notations, essentially a recording of a pre-existing liability in the IRS's record. The reason assessments may be important, though, is for triggering administrative collection remedies. The IRS could not collect by levy in this case had it not first assessed. But that brings me to the second point. The government doesn't need to assess in order to collect. Crim is mistaken when he argues that assessment is required for collection. Taxes and penalties may be, in fact, collected without assessment judicially. In practice, that rarely happens because it's far more efficient to collect administratively, but it's important to understand that it can occur. In fact, if we look at 6501A, and I'm paraphrasing slightly, it says that when there is a tax imposed by the title, it shall be assessed within three years after the return is filed, and no proceeding in court without assessment shall be begun after the expiration of the period. So in addition to setting a general three-year time limit for assessing where a return is filed, it also makes clear that you can proceed in court without assessment. I take what you said earlier to mean when it says the return. It's referring to the return of the tax. It is not, it cannot be returned. When it refers to the return, it cannot be referring to the return of the client of a tax shelter scheme. I understand you're right about that part. Yeah, it's... I think you're referring to the Ninth Circuit case saying that, right? Well, the Ninth Circuit is saying reliance is not an element of the offense, and I think that implies that, that you wouldn't need to have a tax return that relied on it. A taxpayer could walk up to the ledge, buy the shelter, you know, whatever from you, and then, you know, get wise and never rely on it, and you still would have made the false representation. Well, how broad is this principle that you're asserting? The return referred to in 6501A does not refer to the return of the non-promoter of an illegal tax. Does it, does it, does that principle apply across the whole tax code? Well, I would answer by returning to 6671. 6671 is what says you shall assess and collect in the same manner as taxes, and any reference to tax shall be deemed to refer to this penalty. So it's this penalty that you're weighing against 6501A. For this penalty, when is the return for this penalty filed? There is no return for this penalty. It's not the sort of thing that requires a return. No return will ever be filed. And it may be that no taxpayer ever relied on the furnishing of that. It may be that they did rely on the furnishing of that advice, but it may be that they didn't. So, you know, there really is no case law support for the 6501A argument. Circuits that have seen the issue have rejected it. At least two circuits have also held that there's no statute of limitations that applies to accessible penalties, such as the 6700 penalty, or else the very similar 6701 penalty. CRIM also raises an alternative argument about 28 U.S.C. 2462. This court should also find that that does not apply to limit the penalty. Again, there is no case law support for that position. And of its own terms, 2462 only applies where Congress has not otherwise provided. Congress has provided a very comprehensive series of timing limitations in the tax code. It specifically shows to only limit the time to collect after assessment, but not to limit the time to assess, or even to limit the time to collect that assessment. So I don't think it's fair to say that Congress was intending to limit, you know, to use a statute of limitations in Title 28 to limit the collection of penalties in Title 26. Your time is up, but I'll give you a couple minutes if you want to say anything at all about the constitutional issue. As to the constitutional issue, we think that there's no separation of powers problem with presidential removal. This court's opinion in Koretsky held that in 2015 that the tax court is in the executive branch, and that presents no inter-branch or intra-branch removal problem. We don't think the amendment changed that. Certainly, the actual text that was enacted doesn't change the branch in which the tax court is located, and because of that, there is no new question. And a statutory amendment couldn't change all of the underlying constitutional reasoning. This court pretty thoroughly explained that the tax court was not in the legislative branch because it didn't exercise legislative power, and it was not in the judicial branch because it wasn't an Article III court that exercised the judicial power under Article III. That meant the only place the tax court could be was the executive branch, and that's where this court found that it was, and that's where it remains. What impact or effect or work do you think that the amended language in 7441 does? I don't think it has a big substantive effect. I think it clarifies. It makes sure that the tax court is not being treated as an agency. This court already had said it was not an agency, and then sort of left open the question of, well, what does that mean if it's not an agency? For instance, perhaps FOIA doesn't apply. I think adding that to the statute that it's not an agency makes clear that that's true. What about the independent of the executive branch language? I think that may just add clarity and comfort that it's independent, but I think it was already independent. The for-cause removal provision says that judges of the tax court may be removed by the president after notice and opportunity for public hearing for inefficiency, neglect of duty, or malfeasance in office, but for no other cause. Could it be that the work that this amended language is doing is to clarify that inefficiency, neglect of duty, or malfeasance should have very narrow and circumscribed meanings, such that the president can't say, removing you for malfeasance because you took a sick day without a doctor's note, and I'm construing that to be malfeasance, when that might be a pretext for removing someone because the president didn't like their decisions? I think emphasizing independence could lead to a more narrow construction of the removal power, sir. All right. Any other questions? Well, I would have thought the answer to what could we give to Congress's phrase independent of the executive branch is none because it's just wrong. Koresky had said that it can't be independent of the executive branch while being in the executive branch. I think one way to answer that question, Your Honor, is to point out that Koresky holds that it's in the executive branch for constitutional purposes, and the independents may be granting statutory independence. I don't know exactly all the statutory regimes that exist out there, but certainly some of them might, you know, independents might emphasize that those wouldn't apply. So maybe Congress didn't mean to change whether the tax court is in the executive branch for constitutional purposes. Right, and it certainly didn't say it's not in the executive branch or say it's in any other branch. I don't think it moved to the tax court. I mean, it came really close to saying it's not in the executive branch. It said it's independent of the executive branch. In 1776, it would have been hard to say that we post-July 4th were independent of the United Kingdom, and yet still in the United Kingdom, right? I agree, Your Honor, that it may have come close, but I don't think that's what it said, and I don't think that's what it intended. I think if Your Honor is inclined to think that way, I think you could, though, There is such a thing. From my prior life, I studied a lot of the museums and their statutory organizations, and so, for instance, the Holocaust Museum was defined by Congress to be an independent entity of the federal government. It's not within the Smithsonian. It's not within the Park Service or any other agency. It's just its own entity, so to speak. Could that be something akin to that? What Congress is saying here? I mean, I think to Judge Walker's point. Possibly, Your Honor. I think they're certainly emphasizing independence. You know, before the 1969 amendment, they were an independent agency in the executive branch. They were then made a court, and that language was dropped. Now they've brought back explicit language to say they're not an agency, but again to say they're independent of the executive branch. I think that Congress doesn't want anyone calling them to influence their decisions, but as a corollary to being in the executive branch, they must be subject to some sort of presidential removal. They're subject to the same sort of limited presidential removal authority that would be applied to any other multi-member expert body. All right, any other questions, Judge Rogers? No, thank you. All right, thank you, counsel. Mr. Rousseau, we'll give you two minutes for rebuttal. I would submit, Your Honors, that regarding the statute of limitation, that if this court were to conclude that there is no statute of limitation under the code, the fallback provision in Title 28 applies. The repair penalties under 6700 were enacted long after the Title 28 catch-all provision to the extent, and so we all presume that the Congress legislates with knowledge of the existing law, and that's why this court in the 3M decision, in contrast to my opposing counsel's supposition that the default is no statute of limitation, this court rejected that generic statute or canon of construction when it talked about inciting Chief Justice Marshall's and Justice Story's decisions that there are competing canons of construction as well, and that's in addition to the rule of lenity and the strict construction doctrine with the proposition that the Internal Revenue Code is interpreted in favor of taxpayers and against the government. So I don't believe the general proposition that statute of limitations are construed strictly against or in favor of the federal government controls this case, and I would submit that the 3M decision from this court puts that issue to rest. As to the 3M, I think it was environmental enforcement, some kind of regulatory enforcement, but different than a tax enforcement. That is true, but the language that talks about assessment as being prerequisite to enforcement, specifically referenced Judge Boggs' dissenting opinion in Mulligan, and that was that Sixth Circuit opinion was a 6700 case. And then again, in contrast to what my closing counsel has stated, he is correct that no circuit court has determined that 6700 penalties are subject to statute of limitations. However, the District Court in Sage found it was subject to 6501. The District Court in Lamb found it was subject to 2462. The District Court in Mulligan found it was subject to 2462. And Judge Boggs' dissenting opinion in Mulligan, again, found it subject to 2462. So there are numerous jurors out there who found that, yes, the statute of limitations, either in the Internal Revenue Code or the catch-all provision, does apply. And finally, Your Honors, I would submit that when Congress got a hold of this court's pressing opinion, it made changes to the statutory language because it was unhappy with the status quo. It tried to, in fact, change the status quo. And perhaps the language could have been better. Perhaps the language could have been clearer. But the Senate report was clear that the tax court is not part of the executive branch. So if the tax court is not part of the executive branch, here it goes, it's an Article I court, then I submit then the underpinning for the pressing decision has been eroded and presidential removal power from Article II to an Article I legislative court exercise in the United States violates the separation of powers. So I would ask that, given the arguments in the briefing, this court reverse the decision flow and remand. Thank you. Thank you, counsel. We'll take the case under advisement.
judges: Wilkins, Walker, Rogers